DENNIS MICHAEL OLMSTEAD, #221942

        Plaintiff,

vs.

ERICK BALCARECEL, Deputy Warden;
ANGELA KENNELLY, Grievance Coordinator;
ERVIN BELL, Librarian; and
ANTHONY VALONE, Assistant Librarian;

        Defendants.
_____/

Case No. 06-14881

HONORABLE GEORGE CARAM STEH
MAGISTRATE JUDGE STEVEN D. PEPE

**REPORT AND RECOMMENDATION REGARDING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. #17)**
**&**
<u>**PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT (DKT. #21)**</u>

These motions were referred to the undersigned for report and recommendation. For the reasons stated below IT IS RECOMMENDED that Defendants' motion be GRANTED and Plaintiff's motion be DENIED.

**I.    BACKGROUND**

Plaintiff, a prisoner incarcerated in the Michigan Department of Corrections (MDOC), filed a civil rights claim against the above-named defendants alleging that his First, Fourteenth and Eighth Amendment Rights have been violated. Specifically, Plaintiff alleges that Defendants Bell and Valone changed his prison law library schedule in retaliation for his filing grievances regarding denial of access to the law library and Defendant Kennelly placed him on modified access to the MDOC grievance system in retaliation for a grievance Plaintiff filed

against Defendant Balcarcel. Also, in an "amended complaint" Plaintiff added the claim that Defendants Bell and Valone's actions in "forcing" him to attend law library call-outs that interrupt his getting eight hours of sleep amount to cruel and unusual punishment.

Plaintiff alleges that he must have access to the prison law library in the evening session (6:45-7:45) because he is assigned to a 10 p.m. - 6:00 a.m. kitchen work station Thursday through Monday, and afternoon law library access (2:30-3:30) does not allow him a full eight hours of sleep (Dkt. #28, p. 2, Dkt. #17, p. 7).

The chronology of facts, taken in a light most favorable to Plaintiff, are as follows:

April 7, 2005 – Plaintiff filed a kite requesting evening law library on Thursdays (Complaint, Exh. A).
April 10, 2005 – Plaintiff filed Grievance 424 regarding the denial of his request for Thursday evening law library time (Complaint, Exh. B).
April 20, 2005 – Plaintiff was interviewed and a compromise was reached on Grievance 424. the compromise consisted of two evening law library call outs (W/Th) and two afternoon call outs (T/Fri) (*Id.*).
May 9, 2005 – Plaintiff files Grievance 582 alleging that the law library had been closed on the two prior Thursday evenings and was open only 20 hours and not the required 25 hrs (Complaint, Exh. D).
May 18, 2005 – Plaintiff writes a letter to the Prison Chaplain explaining that his compromise had been breached, that Plaintiff had cancelled all library call-outs until this issue was resolved and that he believed this was done in retaliation for a pending grievance (Complaint, Exh. H).
May 19, 2005 – Plaintiff files Grievance 617 alleging harassment/retaliation against Librarians Valone and Bell for changing his schedule on May 18th back to afternoons and speaking to him a threatening and harassing manner. He also indicates that he wishes to cancel all library call-outs until the issue is resolved (Complaint, Exh. I).
May 26, 2005 – Plaintiff files Grievance 640 alleging that he submitted a May 23 request for W/Th evening library call out and on May 25 received notice that he was on call out for May 26 for legal copies, which he did not request (Complaint, Exh. J). He alleges that this was done in retaliation. An undated response indicates that he did request disbursement to make legal copies and MDOC put him on call out to make the requested copies (Complaint, Exh. J-1).

2

May 29, 2005 – Plaintiff files Grievance 652 alleging that the Deputy Warden Balcarcel's response to a flash kite he had submitted regarding the legal copy call-out was inappropriate (Complaint, Exh. L). In Grievance 652 Plaintiff accuses Warden Balcarcel of "making no sense", and being "unable to perform the duties of his job position". An undated response indicates that Grievance 652 was returned without being processed because it was determined not to comply with PD 03.02.130, which requires prisoners to refrain from demeaning the character of the grievant or including non-essential descriptors (Complaint, Exh. L-1).

June 1, 2005 – Plaintiff receives a response to Grievance 582, which indicates that the library is open 46 hours per week and, due to staffing and security issues, afternoons are better staffed so he was moved to all afternoons (Complaint, Exh. D-2).

June 1, 2005 – Plaintiff receives a response to Grievance 617, which indicates that MDOC received Plaintiff's latest request for law library time on T/F evenings and W/Th afternoons, this request is approved, but the library always reserves the right to cancel call-outs so the grievance is considered resolved (Exh. I-1).

June 3, 2005 – Angela Kennelly requested that Plaintiff be placed on modified access to the grievance system due to filing several grievances that were in violation of PD 03.02.130, including several not included in as exhibits to the Complaint (Complaint, Exh. N). This request was approved on June 6, 2005.

June 6, 2005 – Plaintiff files a Step II appeal of Grievance 617 arguing that, although the scheduling issue has been addressed, his retaliation claim has not been addressed (Complaint, Exh. I-2).

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711

F.2d 1319 (6th Cir. 1983).

## III. ANALYSIS

    A. <u>**Plaintiff's Motion For Summary Judgment**</u>

Plaintiff's motion seeks summary judgment based on the allegation that the Defendants failed to answer the Complaint within 20 days pursuant to Fed. R. Civ. P. 12 (Dkt. #21, p. 4).

As Plaintiff has already been informed in response to his motion for entry of default judgement (Order, Dkt. #23), default judgment for failure to answer in this case would be improper because 42 U.S.C. §1997e provides defendants in actions brought by prisoners pursuant to §1983 with the ability to waive the right to answer and indicates "such waiver shall not constitute an admission of the allegations contained in the complaint". 42 U.S.C. §1997e(g)(1). So, while the Court "may require any defendant to reply to a complaint brought under this section if it finds that the plaintiff has a reasonable opportunity to prevail on the merits", 42 U.S.C. §1997e(g)(2), until such time as this happens, none of the defendants in this matter are obligated to answer the complaint. *See e.g. Stevenson v. MDOC*, 2007 WL 1202310, *1 (W.D.Mich. 2007)("Section 1997e(g) bars plaintiff from obtaining an entry of default . . . because defendants have no obligation to reply to the complaint until ordered by the court)(citations omitted).

Because the Defendants have not been ordered to submit an answer in this matter and Plaintiff has not argued the merits of his claims in this motion for summary judgment, IT IS RECOMMENDED that the Plaintiff's motion be DENIED.

B. <u>Defendants' Motion for Summary Judgment</u>

   1. Access to the Courts/Law Library

While in his Response Plaintiff appears to explain that he meant his access to the courts and law library claims to be couched solely in terms of a retaliation claim, the allegations made in the Complaint could be construed broadly enough to encompass a First Amendment access to the courts claim. Therefore, this claim will be addressed in this Report.

In *Bounds v. Smith*, 430 U.S. 817, 821 (1977), the Supreme Court held that prisoners are to be supplied some means of obtaining legal assistance. The Supreme Court did not, however, "prescribe any specific amount of library time which prisoners must be provided; rather, access need only be reasonable and adequate." *Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985).

In fact, restricted access to the law library is not *per se* denial of access to the courts. *United States v. Evans,* 542 F.2d 805 (10th Cir.1976). "[P]rison regulations which reasonably limit the times, places, and manner in which inmates may engage in legal research and preparation of legal papers do not transgress the constitutionally protected rights so long as the regulations do not frustrate access to the courts. *Gittlemacker v. Prasse,* 428 F.2d 1 (3d Cir.1970); see also *Frazier v. Ward*, 426 F.Supp. 1354 (N.D.N.Y.1977)." *Twyman v. Crisp,* 584 F.2d 352, 357, 358 (10th Cir. 1978).

Because Plaintiff has not alleged nor provided any evidence that his access to the court was actually prejudiced or frustrated by the fact that he was not given his choice of time for his law library call out, there remains no genuine issue of material fact regarding this claim and Defendants should be granted summary judgment.

## 2. Retaliation

A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d at 394.

### a. Protected Conduct

An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996). Yet, Defendants are correct that this right is protected only if the grievances are not frivolous. *See Lewis v. Casey*, 518 U.S. 343, 353 (1996). Defendants argue that Plaintiff has failed to allege that he was engaged in a constitutionally protected activity due to the fact that the grievances which Plaintiff argues triggered the retaliation were frivolous.

Plaintiff stated in the Complaint that he felt Defendants Bell and Valone removed him from evening library call-out in retaliation for his filing Grievance 582, in which he had alleged that the law library had been closed on the two prior Thursday evenings (Dkt. # 1, p. 14 (referring to the electronic page numbers)). Plaintiff goes on to allege that he was placed on a legal copy call-out in retaliation for "several prior grievances currently pending" (*Id.*)[1] and that

---

[1] The grievances that were pending on May 25 when Plaintiff was placed on a legal copy call-out were Grievance 582 (described in the previous paragraph) and 617 (Grievance 424 had been resolved with the two evening call-out compromise). In Grievance 617 Plaintiff complained that Defendants Bell and Valone had changed his law library call-outs back to all afternoons.

Defendant Kennelly placed him on modified access due to a grievance he filed against Defendant Balcarcel (Dkt. #1, p. 16).

Grievances Regarding Access to Law Library

As stated above though the *Bounds* Court has held that prisoners are to be supplied some means of obtaining legal assistance, it did not "prescribe any specific amount of library time which prisoners must be provided; rather, access need only be reasonable and adequate." *Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985).

Plaintiff has not provided any evidence that his access to the law library was unreasonable or inadequate and that his access to the court was actually prejudiced by the fact that he was not given his choice of time for his law library call-out. He does allege that he could not get eight hours of sleep if required to attend the afternoon law library because his kitchen assignment ended at 6:00 a.m. and afternoon law library starts at 2:30 p.m. Yet, he has not (a.) provided any explanation as to why the 8.5 hours between his shift and the afternoon law library session would not allow him to sleep eight hours, nor (b.) refuted Defendants' evidence that Plaintiff signed up to be called out for weight pit, which begins at 1:45 p.m., on three of the afternoons in which he worked the midnight kitchen shift (Dkt. #17-3, p.3 & Exh. C). Therefore, the grievances in which he complained about his access to the law library should be considered frivolous and unable to support a claim for retaliation.

Grievance Against Defendant Balcarcel

In Grievance 652 Plaintiff alleges that the Deputy Warden Balcarcel's response to a flash kite he had submitted regarding the legal copy call-out was inappropriate (Complaint, Exh. L). Plaintiff accuses Warden Balcarcel of "making no sense", and being "unable to perform the

7

duties of his job position". An undated response indicates that Grievance 652 was returned without being processed because it was determined not to comply with PD 03.02.130, which requires prisoners to refrain from demeaning the character of the grievant or including non-essential descriptors (Complaint, Exh. L-1). Plaintiff alleges that Defendant Kennelly retaliated against him for filing this grievance.

> While it is true that a prisoner has a First Amendment right to file grievances against prison officials, *see Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996), "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Thaddeus-X*, 175 F.3d at 395. Thus, while a prisoner may have a right to file grievances against prison officials, he or she cannot exercise that right in a manner that violates legitimate prison regulations or penological objectives. *See Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir.1995) ( "The ability to transfer a prisoner who is interfering with prison administration and staff morale goes to the essence of prison management.").

*Smith v. Campbell* 250 F.3d 1032, 1037 (6th Cir. 2001).

Because it is undisputed that Grievance 652 failed to comply with MDOC regulations, Plaintiff has failed to demonstrate a genuine issue of fact that he was engaged in a protected activity in filing the grievance and the retaliation claim against Defendant Kennelly should be dismissed.

### b. Adverse Action That Would Deter a Person of Ordinary Firmness

Had the grievances Plaintiff filed not been frivolous, Plaintiff's claim against Defendants Kennelly, Bell and Valone would still fail because the adverse action alleged to have been taken cause, if anything, *de minimus* injury to Plaintiff.

A retaliation claim does not require that the Plaintiff, actually be dissuaded from future exercise of a constitutional right. Rather the question is whether the challenged conduct "would

'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X v. Blatter*, 175 F.3d at 396, see also *Bell v. Johnson*, 308 F.3d 594, 605 (6th Cir. 2002). In *Thaddeus-X*, the Court distinguishes between the harm caused by a denial of prison services, and the harm caused by retaliation:

> In a retaliation claim such as this, however, the harm suffered is the adverse consequences which flow from the inmate's constitutionally protected action. Instead of being denied access to the courts, the prisoner is penalized for actually exercising that right... ("Because the retaliatory filing of a disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, the injury to this right inheres in the retaliatory conduct itself.")

*Thaddeus-X,* 175 F.3d at 394 (quoting *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir.1994)).

*Siggers-El v. Barlow*, 412 F.3d 693, 703 (6th Cir. 2005), repeats this point and notes that unlike a First Amendment access to the courts claim that does require the plaintiff inmate having been impeded in pursuit of a legal claim, the harm or damage in a First Amendment retaliation claim is the penalty imposed on the inmate for a past exercise of a constitutional right. "Instead of being *denied* access to the courts, the prisoner is penalized for actually exercising that right." *Siggers-El v. Barlow*, 412 F.3d at 703.

Retaliatory conduct, unlike other deprivations of civil rights, requires no further proof of injury than the retaliatory punishment. *See Crawford -El v. Britton*, 523 U.S. 574, 589 n.10 (1998)(citation omitted). Yet, *Thaddeus-X* notes that some "threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations" though "this threshold is intended to weed out only inconsequential actions, and is not means whereby only egregious retaliatory acts are allowed to proceed past summary judgment." *Thaddeus-X,* 175 F.3d at 398.

9

*Bell v. Johnson,* 308 F.3d 594 (6th Cir. 2002), notes a number of retaliatory acts that would satisfy the adverse action prong of *Thaddeus-X* :

> [W]e note that a number of cases from other circuits have held that **confiscating an inmate's legal papers and other property** constitutes sufficient injury to support a First Amendment retaliation claim. *See Penrod v. Zavaras,* 94 F.3d 1399, 1404 (10th Cir.1996) (reversing grant of summary judgment to defendants on inmate's claim that guards conducted **harassing cell searches, seized legal materials, refused to provide inmate with hygiene items, and transferred inmate to segregation** in retaliation for suit against prison officials); *Green v. Johnson,* 977 F.2d 1383, 1389-91 (10th Cir.1992) (holding that inmate's allegation that guards **destroyed his legal materials** in retaliation for his filing of suits and grievances stated a cognizable First Amendment claim); *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986) (same); *Hall v. Sutton,* 755 F.2d 786, 787-88 (11th Cir.1985 (holding that inmate alleged sufficient facts to state a claim of First Amendment retaliation based upon the alleged **confiscation of his tennis shoes** in retaliation for a prior lawsuit against prison officials); *see also Zimmerman v. Tribble,* 226 F.3d 568, 573-74 (7th Cir.2000) (reversing dismissal of claim that prison **law librarian repeatedly denied prisoner access to the prison law library** in retaliation for protected conduct). In *Wright,* the Eleventh Circuit determined that a prisoner had alleged sufficient injury to state a First Amendment retaliation claim by asserting that correctional officers conducted a retaliatory search of his cell and that "[i]n the course of the search, [the defendants] **destroyed seven of [the plaintiff's] photographs and some legal papers .... [and] also seized legal pleadings** concerning [the plaintiff's] challenge to his conviction and a law book," which were never returned. *Wright,* 795 F.2d at 965. The court concluded that the plaintiff had "sufficiently alleged facts bringing actions that might not otherwise be offensive to the Constitution, such as the search itself or the **confiscation and destruction of [legal and] nonlegal materials** ..., within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances." *Id.* at 968. Although *Wright* did not explicitly consider the "ordinary firmness" question, the court applied essentially the same well-established principles of First Amendment retaliation law that formed the basis for this court's decision in *Thaddeus-X.*
>
> In addition, we have previously suggested in dicta that a **retaliatory cell search and seizure of an inmate's legal documents** satisfies the adverse action prong of the *Thaddeus-X* test. *Walker v. Bain,* 257 F.3d 660, 664 (6th Cir.2001), *cert. denied,* 535 U.S. 1095, 122 S.Ct. 2291, 152 L.Ed.2d 1050 (2002). In *Walker,* a jury in a civil trial concerning an inmate's First Amendment retaliation claim returned special interrogatories finding that "both defendants improperly **confiscated and removed [ the plaintiff's] personal papers** from his cell, that [the plaintiff's] previous filing of grievances and lawsuits was a substantial and

motivating factor behind this conduct, but that the defendants' actions did not constitute an egregious abuse of power or otherwise shock the conscience." *Id.* at 672. A verdict initially was entered for the defendants based upon the jury's conclusion that the retaliatory acts were not conscience-shocking.

*Bell*, 308 F.3d at 604-05 (emphasis supplied).

In the present case Plaintiff's claimed injury has to do with being placed on modified access to the grievance system by Defendant Kennelly, being called out to make legal copies on a date he did not choose and having his evening law library sessions changed to afternoons.

Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact. *Bell*, 308 F.3d at 603. Thus, unless the claimed retaliatory action is truly "inconsequential," the plaintiff's claim should go to the jury. *Thaddeus-X*, 175 F.3d at 398.

In addressing this element, Plaintiff has the evidentiary burden to establish "that the retaliatory acts amounted to more than a de minimis injury." *Id* at 606. Where, as here, a plaintiff makes no attempt to meet this burden except in conclusory fashion, summary judgment is proper. *Sarah v. Thompson*, 109 Fed. Appx. 770, 772, 2004 WL 2203585, *2 (6th Cir. 2004)(citing *Bell*).

Furthermore,

[p]lacement on modified access does not constitute retaliation because it "does not deny a Michigan prisoner the right or ability to seek redress for meritorious grievances[,][r]ather, it merely requires the prisoner to obtain permission from the grievance coordinator to file a grievance." *Kennedy v. Tallio,* 20 F. App'x 469, 471 (6th Cir.2001) (citing *Hartsfield v. Mayer,* No. 95-1411, 1996 WL 43541, at *2 (6th Cir. Feb.1, 1996) (unpublished order)).

*Moore v. Berghuis*, 2007 WL 107666, *3 (W.D.Mich. 2007).

Last, while Plaintiff continues to maintain the validity of his claim regarding being called out to make legal copies on a date which he did not choose, he has not disputed the Defendants' proffered facts: Plaintiff requested a disbursement from his account to make legal copies on May 21, 2005, and he made the legal copies on the call-out date, albeit chosen by MDOC, May 26, 2005. Even if Plaintiff's allegations are true, Plaintiff has not shown that he suffered anything more than a *de minimus* injury for having been called out to make legal copies on a date other than one he would have chosen.

### c. Causal Connection

Plaintiff's claims also do not meet the third element of a retaliation claim, especially with respect to the claim against Defendant Kennelly.

The third element involves the subjective motivations of the defendants. *Thaddeus-X,* 175 F.3d at 399. "[B]are allegations of malice would not suffice to establish a constitutional claim." *Ibid.* (internal quotation marks and citations omitted). Further, according to *Thaddeus-X,* "[o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Ibid.*

There is no evidence to suggest that the defendant librarians changed his law library schedule because Plaintiff filed a grievance complaining about law library access, nor any evidence that Defendant Kennelly placed Plaintiff on modified access for any reason other than those stated in her request. Because so many of Plaintiff's alleged protected rights were of such

12

minor significance, that lessens the likelihood that any would be sufficiently aggravating to motivate anyone to take retaliatory action because of them.

Though it has been held that temporal proximity between the protected conduct and the retaliatory action alone "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive' ", *Muhammad v. Close*, 379 F.3d 413, 417-18 (2004), Plaintiff's lack of other evidence showing or even allegations suggesting causation weighs against holding that on these facts any reasonable jury could find a causal connection based solely on the temporal proximity of the actions.

### 3. Claim Against Defendant Balcarcel

The Complaint does not clearly articulate the claim against this Defendant Balcarcel. Plaintiff only states that Defendant Kennelly initiated Plaintiff's modified access status due to a grievance Plaintiff filed against Defendant Balcarcel and, in his claim for relief, suggests that Defendant Balcarcel is liable for his failure to investigate Plaintiff's claims regarding being denied access to the courts and law library (Dkt. #1, p. 17).

The allegation regarding Defendant Kennelly's action does not allege any action or even knowledge on the part of Defendant Balcarcel. And, the only basis for liability against Defendant Balcarcel regarding the legal copy call-out investigation is the liability of a supervisor.

Supervisory liability cannot be imposed under §1983 on a respondeat superior theory. *Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978). To be held liable for a claim for damages, a supervisor must have "at least implicitly authorized, approved or knowingly

13

acquiesced in the unconstitutional conduct". *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir.1989) (citing *Hayes v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.1982). "Supervisory liability may be based upon any of the following: a) active participation in the unconstitutional conduct; *Birrell v. Brown*, 867 F.2d at 959; b) encouragement or condonement of the specific incident of misconduct; *Id.*; c) a policy of inadequately training subordinates; *Barber v. Salem*, 953 F.2d 232, 236 (6th Cir.1992); and d) failure to conduct a reasonable inquiry after the fact; *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir.1985)". *Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir.1990).

Plaintiff apparently is alleging a failure to conduct a reasonable inquiry on the part of Defendant Balcarcel in response to Plaintiff's grievance regarding the call-out for legal copies (Dkt. #1, p. 14 and Exh. K). At the outset, this claim could be dismissed on the basis that, as explained above, Plaintiff has failed to provide a genuine issue of material fact regarding his claim that his being placed on the legal copy call-out was unconstitutional. Therefore, Defendant Balcarcel could not be found to have authorized, approved or knowingly acquiesced in unconstitutional conduct for failing to investigate the other Defendants' actions, even there were evidence to support a failure on his part to investigate this claim. Yet, there is no such evidence.

Exhibit K to the Complaint shows that Defendant Balcarcel responded to Plaintiff's flash kite on this subject on the same day it was submitted by Plaintiff. In this response Defendant Balcarcel pointed out that Plaintiff had merely been called out to make the legal copies for which he sought a disbursement and that he had not used the proper form to request the law library time he wanted. Plaintiff, though he apparently disputes the second finding, has not controverted these

findings with any evidence.[2] Therefore, there remains no genuine issue of fact regarding Plaintiff's allegations regarding Defendant Balcarcel.

### 4. Cruel and Unusual Punishment

Plaintiff alleges that he cannot not get eight hours of sleep if he is required to attend the afternoon law library because his kitchen assignment ended at 6:00 a.m. and afternoon law library starts at 2:30, and that depriving him of eight hours of sleep amounts to cruel and unusual punishment.

Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Therefore, prison officials are prohibited from inflicting punishment that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities.' " *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir.1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth

---

[2] It further appears that Plaintiff has not properly exhausted this claim, as the grievance he filed on the subject, Grievance 652, was returned unprocessed for failure to comply with MDOC policy (Dkt. # 1, Exh L, L-1). *Woodford v. Ngo*, 126 S.Ct. 2378, 2387 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

Amendment." *Ivey*, 832 F.2d at 954.

An Eighth Amendment claim has objective and subjective components: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir.1997). A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly).

As stated above, Plaintiff has not (a.) provided any explanation as to why the 8.5 hours between his shift and the afternoon law library session would not allow him to sleep eight hours, nor (b.) refuted Defendants' evidence that Plaintiff signed up to be called out for weight pit, which begins at 1:45 p.m., on three of the afternoons in which he worked the midnight kitchen shift (Dkt. #17-3, p.3 & Exh. C). Therefore, Plaintiff has failed to provide evidence of a sufficiently grave deprivation to support this claim. In sum, Plaintiff has failed to create a genuine issue of material fact with regard to his Eight Amendment claim regarding sleep deprivation.

## IV. RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Defendants' motion be GRANTED and Plaintiff's motion be DENIED.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure

to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: June 28, 2007  s/Steven D. Pepe
Ann Arbor, Michigan  United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Christine M. Campbell, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Dennis Olmstead, #221942, Lakeland Correctional Facility, 141 First Street, Coldwater, MI 49036.

                                                 s/James P. Peltier
                                                 Courtroom Deputy Clerk
                                                 U.S. District Court
                                                 600 Church St.
                                                 Flint, MI 48502
                                                 810-341-7850
                                                 pete_peltier@mied.uscourts.gov